# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| GARY E. PATTERSON, P.C. and § | |
| GARY E. PATTERSON, § | |
| § | |
| Plaintiffs, § | |
| § | |
| VS. § | CIVIL ACTION NO. H-05-3609 |
| § | |
| PHILIP FELDMAN, § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER
## ON MOTION TO REMAND AND MOTION TO DISMISS

Plaintiffs, Gary E. Patterson, P.C. and Gary E. Patterson (together, "Patterson"), Texas residents, sued Philip Feldman, a California resident, in Texas state court. Feldman timely removed on the basis of diversity of citizenship. Patterson moves to remand on the basis that the amount in controversy is less than $75,000. (Docket Entry No. 7). Feldman has responded to the motion to remand and moved to dismiss or transfer, asserting that his contract with Patterson contains a binding forum-selection clause designating California as the forum for suit. (Docket Entry No. 11). Patterson responds by asserting that the clause does not apply and is unenforceable.

After careful consideration of the pleadings, the motions and responses, the parties' submissions, and the applicable law, this court denies the motion to remand. The motion to dismiss is denied, but the motion to transfer under section 1406 is granted. This case is

transferred to the Central District of California, Los Angeles Division, under the parties' contractual forum-selection clause. The reasons are set out below.

## I.   Background

In his petition in state court, Patterson alleged that he had filed a legal malpractice lawsuit in Harris County, Texas and needed an expert witness. Patterson researched the Internet for a legal malpractice expert. That research led him to Feldman. Based on the information Feldman provided, including a curriculum vitae, Patterson and Feldman executed a retainer agreement, paid Feldman a $1,500 retainer fee, and sent information about the malpractice suit. Feldman produced an expert report, opining that there was indeed legal malpractice. Patterson paid Feldman $23,6348.83 for work done before he gave a deposition, not including expenses. Feldman was then deposed. During the deposition, cross-examination revealed flaws in Feldman's credentials, the work he had done for Patterson, and the opinion he had provided.

In this suit, Patterson alleged that Feldman breached the retainer agreement; committed fraud in falsely representing his credentials and the work he had done for Patterson; violated the Texas Deceptive Trade Practices Act; and inflicted emotional distress. Patterson sought actual damages, multiple damages under the Texas DTPA, attorney's fees in the amount of 40 percent; and punitive damages. Patterson's Original Petition alleged actual damages "in excess of the minimum jurisdictional amounts of this Court." In the prayer, however, Patterson became more specific, seeking judgment in the amount of

$12,370,428.00 for certain of the plaintiffs in the underlying legal malpractice case and $5,012,808.00 for another of the plaintiffs.

Feldman timely removed. In moving to remand, Patterson asserts that he pleaded the specific actual damages amount by mistake and that he is seeking less than $75,000. In moving to dismiss, Feldman relies on the forum-selection clause of the contract, which is attached as an exhibit.

**II.     The Motion to Remand**

    **A.     The Legal Standard for Establishing the Amount in Controversy**

The burden of establishing federal subject matter jurisdiction rests with the party seeking to invoke it. *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995), *cert. denied,* 116 S.Ct. 180 (1995). For diversity purposes, the amount in controversy is determined by the amount sought on the face of the plaintiff's pleadings, so long as the plaintiff's claim is made in good faith. *St. Paul*, 134 F.3d at 1253; *De Aguilar*, 47 F.3d at 1408. When a complaint in a removed case does not state a specific amount of damages, the defendant must establish by a preponderance of the evidence that "the amount in controversy exceeds the [$75,000] jurisdictional amount." *St. Paul*, 134 F.3d at 1253. A district court must ask "whether it is more likely than not that the amount of the claim will exceed [the jurisdictional amount]." *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1336 (5th Cir. 1995).

"The district court must first examine the complaint to determine whether it is 'facially apparent' that the claims exceed the jurisdictional amount. If it is not thus apparent,

the court may rely on 'summary judgment-type' evidence to ascertain the amount in controversy." *St. Paul*, 134 F.3d at 1253 (footnotes omitted).  This requirement is met if (1) it is apparent from the face of the petition that the claims are likely to exceed $75,000, or, alternatively, (2) the defendant sets forth "summary judgment type evidence" of facts in controversy that support a finding of the requisite amount.  *See Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 723; *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir.1999); *Allen*, 63 F.3d at 1335 (5th Cir. 2002).  If a state statute provides for attorney's fees, such fees are included as part of the amount in controversy.  *Foret v. S. Farm Bureau Life Ins. Co.*, 918 F.2d 534, 537 (5th Cir. 1990); *see also* 14A C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 3712 at 176 (2d ed. 1985).  If a defendant fails to establish the requisite jurisdictional amount, the court must remand the case to state court.

**B.     Analysis**

Patterson's state court petition does state an amount he seeks in actual damages—$17 million—that is well in excess of $75,000.  In his motion to remand, Patterson contends that he incorrectly alleged the actual damages he sought.  It has long been recognized that unless the law gives a different rule, the sum plaintiff claims controls if the claim is apparently made in good faith.  *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938);  *De Aguilar*, 47 F.3d at 1408.  To justify dismissal or remand  in such a circumstance, "it must appear to a legal certainty that the claim is really for less than the jurisdictional amount."  *St. Paul Mercury*, 303 U.S. at 289.

Patterson is in the unusual position of controverting his own damages allegation in his motion to remand, asserting that he never intended to seek damages in the amount he alleged. A court may consider pleadings or affidavits submitted by the plaintiff for the purpose of clarifying the amount in controversy question. *De Aguilar*, 47 F.3d at 1406. If the affidavit or amended pleading is submitted to "clarify a petition that previously left the jurisdictional question ambiguous," then it will be allowed. *Asociacion Nacional de Pescadores a Pequena Escala O Antesonales de Columbia*, 988 F.2d 559, 565 (5th Cir. 1993). In this case, however, Patterson did not file an amended pleading nor an affidavit clarifying the damages claimed in his original petition. Instead, he simply asserted that he had made a mistake in alleging the amount of actual damages he sought.

Even if this court disregarded the assertion of $17 million in damages and treated Patterson's state-court petition as not alleging a specific dollar amount of actual damages, the amount in controversy would be satisfied. It is facially apparent that the damages sought exceed $75,000. Patterson alleged that he paid Feldman $23,638.88 for work done up to the deposition. Patterson alleged that he is entitled to multiple damages under the DTPA, including three times the actual damages in excess of $1,000. He also alleged a right to recover attorney's fees, damages for mental anguish, and punitive damages for fraud. The nature of the claims and the penalties and attorney's fees sought makes it facially apparent that the amount in controversy exceeds $75,000, exclusive of interest and costs. *See, e.g.*, *Pollet v. Sears Roebuck & Co.*, 46 Fed. Appx. 226 (5th Cir. 2002) (unpublished opinion) (plaintiff's claims showed an amount in controversy that exceeded $75,000 when complaint

alleged serious and painful injuries to her face, elbow, hand, and tail bone; accompanying pain and mental anguish; medical expenses; and diminished earning capacity); *Lundy v. Cliburn Truck Lines, Inc.*, No. 05-477, 2005 WL 2837543 at *4 (S.D. Miss. Oct. 26, 2005) ("Based on the Plaintiffs' silence on the amount in controversy issue, and based on the nature of the subject claims, the Court finds that the amount in controversy requirement of § 1332(a) is met."); *Frye v. Am. Gen. Finance, Inc.*, 307 F. Supp.2d 836, 840 n.2 (S.D. Miss. 2004) ("Based on the nature of the claims in this case, as well as the plaintiffs' silence on the issue, the Court finds that the amount in controversy requirement of 28 U.S.C. § 1332(a) is satisfied."); *Martin v. Sw. PCS, L.P.*, No. 03-866, 2003 WL 22477692 (W.D. Tex. Nov. 3, 2003) (where plaintiff sought damages for lost wages and lost benefits it was more likely than not that, if plaintiff was successful, his compensatory damages, punitive damages, and attorney's fees would exceed the $75,000 minimum given his "salary, the length of time since the alleged constructive discharge, and the allegations of severe emotional distress").

The motion to remand is denied.

## III. The Motion to Dismiss based on the Forum-Selection Clause

Feldman also moves to dismiss under Rule 12(b)(3) or to transfer under 28 U.S.C. § 1406(a)[1] because the dispute is subject to a valid forum-selection clause. Patterson contends

---

[1] Section 1406(a) provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

that the court should not enforce the forum-selection clause because it does not designate an exclusive forum and its incorporation into the agreement was a product of fraud.

### A. The Legal Standard for Determining Whether the Clause is Mandatory or Permissive

Patterson alleges that the forum-selection clause is vague and ambiguous and does not establish exclusive venue in the California courts to resolve disputes arising from the parties' contract. In construing a written contract, the court's primary concern is to ascertain the true intent of the parties as expressed in the instrument.[2] *Leasehold Expense Recovery, Inc. v. Mothers Work, Inc.*, 331 F.3d 452, 456 (5th Cir. 2003); *Flores v. Am. Seafoods Co.*, 335 F.3d 904, 910 (9th Cir. 2003). Ambiguity is a question of law for the court to decide. If the contract's wording has a definite or certain legal meaning, it is not ambiguous. If the language of the contract is subject to two or more reasonable interpretations in light of surrounding circumstances and after applying rules of contract construction, it is ambiguous, and the court will resolve its meaning.

Forum-selection clauses can be either mandatory or permissive. *See City of New Orleans v. Mun. Admin. Servs.*, 376 F.3d 501, 504 (5th Cir. 2004). Mandatory forum-selection clauses require that the suit be brought only in the named forum. Permissive

---

[2] The parties do not discuss what law applies to the contract interpretation. The test for determining the meaning of a contract is the same in both Texas and California. "Under California law, the mutual intention of the parties at the time the contract is formed governs interpretation of the contract." *Milebach v. C.I.R.*, 318 F.3d 924, 936 (9th Cir. 2003) (citing Cal. Civ. Code § 1636; *AIU Ins. Co. v. Superior Court*, 799 P.2d 1253, 1264 (Cal. 1990)). "Such intent is to be inferred, if possible, solely from the written provisions of the contract." *Id.* "Under Texas law, . . . . [t]he court's primary concern is to enforce the parties' intent as contractually expressed, and an unambiguous contract will be enforced as written." *Interstate Contracting Corp. v. City of Dallas, Tex.*, 407 F.3d 708, 712 (5th Cir. 2005).

forum-selection clauses allow the suit to proceed in the named forum, but do not mandate that the named forum is the exclusive forum for the suit. A permissive forum selection clause authorizes jurisdiction in a particular forum, but does not prohibit litigation elsewhere. *Id.*

The wording of the forum-selection clause is crucial in determining if it is mandatory or permissive. *Compare Keaty v. Freeport Indonesia, Inc*., 503 F.2d 955, 956–57 (5th Cir. 1974) (finding permissive a forum-selection clause stating: "This agreement shall be construed and enforceable according to the law of the State of New York and the parties submit to the jurisdiction of the courts of New York"), *with Kevlin Servs., Inc. v. Lexington State Bank*, 46 F.3d 13, 14–15 (5th Cir. 1995) (finding mandatory a forum-selection clause stating: "This contract shall be interpreted and construed in accordance with the laws of the State of Texas. The legal venue of this contract and any disputes arising from it shall be settled in Dallas County, Texas."). To find a clause mandatory, the language "must clearly demonstrate the parties' intent to make [the forum] exclusive." *City of New Orleans v. Municipal Admin. Servs., Inc.*, 376 F.3d 501, 504 (5th Cir. 2004). "Where the agreement contains clear language showing that jurisdiction is appropriate only in a designated forum, the clause is mandatory." *Von Graffenreid v. Craig*, 246 F. Supp.2d 553, 560 (N.D. Tex. 2003) (*citing Excell, Inc. v. Sterling Boiler & Mech., Inc*., 106 F.3d 318, 321 (10th Cir.1997)); *Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 763–64 (9th Cir. 1989) ("The prevailing rule is clear from these and other cases that where venue is specified with

mandatory language[,] the clause will be enforced.").[3]  In *Docksider,* the Ninth Circuit distinguished its earlier decision in *Hunt* (in which the court held the forum-selection clause was permissive) by explaining that the forum-selection clause at issue specifically prescribed venue.  *Docksider, Ltd.*, 875 F.2d at 763.  The Ninth Circuit explained that the clause required enforcement because the parties not only consented to jurisdiction in Virginia, but agreed to mandatory venue in Virginia.  *Id.*  "This mandatory language makes clear that venue, the place of suit, lies exclusively in the designated county."  *Id.* at 764.

**B.     Analysis of Whether the Clause is Mandatory or Permissive**

The "Expert Witness Retainer 2004" agreement between Gary E. Patterson, P.C. (a law firm) and Law Offices of Phillip Feldman (a law firm) is only two pages and nine paragraphs long.  The clause at issue is part of paragraph 6:

---

[3] Courts have held forum-selection provisions permissive when the language does not prescribe venue nor provide for exclusivity.  *See Mun. Admin. Servs., Inc.*, 376 F.3d at 504–05  ("The undersigned Contractor does further hereby consent and yield to the jurisdiction of the State Civil Courts of the Parish of Orleans . . ."); *Caldas & Sons, Inc. v. Willingham*, 17 F.3d 123, 127–28 (5th Cir. 1994) ("The laws of the Courts of Zurich are applicable."); *Keaty*, 503 F.2d at 956 ("This agreement shall be construed and enforceable according to the law of the State of New York and the parties submit to the jurisdiction of the courts of New York."); *K & V. Scientific Co., Inc. v. Bayerische Moteren Werke Aktiengesellschaft*, 314 F.3d 494, 496, 500 (10th Cir. 2002) ("Jurisdiction for all and any disputes arising out of or in connection with this agreement is Munich.  All and any disputes arising out of or in connection with this agreement are subject to the laws of the Federal Republic of Germany.").

On the other hand, courts have held that forum-selection clauses are mandatory and enforceable when they provide for exclusivity as to where a case can be brought.  *See Kevlin Servs.*, 46 F.3d at 14–15 (5th Cir.1995) ("This contract shall be interpreted and construed in accordance with the laws of the State of Texas.  The legal venue of this contract and any disputes arising from it shall be settled in Dallas County, Texas."); *Docksider, Ltd.*, 875 F.2d at 763–64 ("This agreement shall be deemed to be a contract made under the laws of the State of Virginia, United States of America, and for all purposes shall be interpreted in its entirety in accordance with the laws of said State.  Licensee hereby agrees and consents to the jurisdiction of the courts of the State of Virginia.  Venue of any action brought hereunder shall be deemed to be in Gloucester County, Virginia.").

> This agreement is entered into and shall primarily be performed in Sherman Oaks, Los Angeles County, California even if expert testifies elsewhere. Said county is designated as the only appropriate and convenient place to resolve any disputes arising hereunder. Expert represents he has qualified as an expert in legal malpractice in the above and multiple other states.

(Docket Entry No. 11, Ex. A, ¶ 6).

Patterson asserts that the language in the forum-selection clause is "vague and ambiguous," but the words used are clear and susceptible to only one interpretation. The words state that Los Angeles County, California is "designated as the only appropriate and convenient place to resolve any disputes arising" under the parties' contract. The word "only" is a simple but clear limitation that not only permits Los Angeles County to be a forum for the case, but requires it.

It is clear that the forum-selection clause applies to the claims raised in this suit. The language of the contract makes it clear that "any disputes arising hereunder" are covered by the clause. "Claims that arise out of the contractual relationship and implicate the agreement are subject to the forum selection clause." *Kessmann & Assocs., Inc. v. Barton-Aschman Assocs., Inc.*, 10 F. Supp. 2d 682, 688 (S.D. Tex. 1997).

The forum-selection clause is mandatory and applies to the subject matter of this suit. The remaining issue is whether it was procured by fraud and is unenforceable.

### C. The Legal Standard Governing the Enforceability of the Clause

The law that applies to questions regarding the enforceability of forum selection clauses is federal, whether jurisdiction be based on diversity, federal question, or a combination of the two. *Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir.1997). Courts

presumptively enforce forum-selection clauses, but the presumption of enforceability may be overcome by a clear showing that the clause is "'unreasonable' under the circumstances." *Id*. at 963 (*citing M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)). If the forum-selection clause was incorporated into the agreement as a result of fraud, it may be found unreasonable. *Haynsworth*, 121 F.3d at 963. The party resisting enforcement on these grounds bears a "heavy burden of proof." *Id*. Fraud may invalidate a forum-selection clause, but only if the inclusion of that clause, as opposed to the signing of the entire contract, was the product of fraud. *Scherk v. Alberto-Culver*, 417 U.S. 506, 519 (1974). The mere allegation of fraudulent conduct does not suspend operation of a forum-selection clause. Rather, the proper inquiry is whether the forum-selection clause is the result of fraud in the inducement of the forum-selection clause itself. *See Afram Carriers, Inc. v. Moeykens*, 145 F.3d 298, 302 n.3 (5th Cir.1998) (party claiming fraud must show that inclusion of forum-selection clause itself, not the entire agreement, was a product of fraud).

**D.     Analysis of the Enforceability of the Forum-Selection Clause**

In the original petition filed in state court, Patterson alleged that on Feldman's web site, curriculum vitae, and retainer agreement, he made misrepresentations about his credentials and experience as an expert. Patterson specifically alleged that on the web site and c.v., Feldman stated that he had "never failed to qualify as an expert in any state," and in the retainer agreement, states that he has "qualified as an expert in legal malpractice in [California] and multiple other states." Patterson alleged that during cross-examination of Feldman in his deposition, evidence was introduced showing a Texas court had rejected

Feldman as an expert. Patterson alleged that he had relied on Feldman's representations about his credentials and experience, to his detriment.

In paragraph 6 of the parties' retainer agreement, Feldman "represents he has qualified as an expert in legal malpractice in [California] and multiple other states." Patterson argues that because this sentence is in the same paragraph of the retainer agreement as the forum-selection clause, it makes the forum-selection clause unenforceable. The argument is unpersuasive. Patterson's original petition makes clear that he is alleging that Feldman's representations about his qualifications as an expert in legal malpractice had led Patterson to enter into the retainer agreement, not merely into the forum-selection provision of that agreement. There is no allegation of fraud specific to the forum-selection clause in Patterson's original petition. Allegations of fraud in the inducement of the contract as a whole, not merely the forum-selection clause, do not suspend operation of that clause. *Compare Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 890 (6th Cir.2002) (holding that there was "no question that Great Earth fraudulently induced the Simonses to agree to the arbitral forum selection clause . . . which provides that arbitration of disputes take place in New York" by knowingly misrepresenting in the Offering Circular that it would not seek arbitration outside of Michigan).

The record also defeats any argument that the forum-selection clause resulted from overreaching. The Fifth Circuit has articulated the following definition: "Overreaching is that which results from an inequality of bargaining power or other circumstances in which there is an absence of meaningful choice on the part of one of the parties." *Haynsworth*, 121

F.3d at 965 n.17 (citation omitted). The parties in this case were both law firms and lawyers, and there is no allegation of any inability to negotiate freely. *See Int'l Software Sys., Inc. v. Amplicon, Inc*., 77 F.3d 112, 116 (5th Cir. 1996).

The forum-selection clause is enforceable.

**IV.    Conclusion**

The motion to remand is denied. The motion to dismiss is denied, but the motion to transfer under section 1406 is granted. This case is transferred to the Central District of California, Los Angeles Division, under the parties' contractual forum-selection clause.

SIGNED on December 6, 2005, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge